IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EARL DIEHL,

                              Petitioner,         REPORT AND RECOMMENDATION

     v.

MICKEY MCCASH, Warden,                        08-cv-742-slc
Oregon Correctional Center,

                              Respondent.

---

      Before me for report and recommendation is the petition of Earl Diehl for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Diehl challenges his custody resulting from his December 2005 conviction in the Circuit Court for Jefferson County for perjury in his earlier criminal trial in Jefferson County Case No. 03 CF 299.  Petitioner contends that his no contest plea was not entered knowingly because he entered it upon the advice of a lawyer who was ineffective.  More specifically, Diehl contends that his lawyer failed to protect him from various misconduct by the prosecutor both before and during the plea hearing, conducted a faulty investigation and gave him bad advice at the plea hearing.  I am recommending that the court deny the petition because Diehl has failed to show that the state appellate court unreasonably applied clearly established federal law or made any unreasonable determinations of fact when it rejected his claims.

      From the decisions of the state courts and other documents in the record, I find the following facts.

FACTS

      On April 20, 2004, Diehl was tried in the Circuit Court for Jefferson County for theft by contractor.  Diehl's defense was that he had a bona fide business dispute with the victim and

that he was holding the disputed amount in trust. His testimony included a statement that he had placed $3,400 from a cashed check in a lock box at his home. Suspecting that Diehl was lying, the Jefferson County police quickly obtained a search warrant and dispatched officers to Diehl's home while the jury waited. No money was found in the lock box. The jury later returned a guilty verdict.

After the trial, the state filed an information charging petitioner with perjury on the basis of the lock box statement. Diehl and the state eventually entered into a plea agreement in which the state agreed to dismiss a felony bail jumping charge in another case in exchange for his no contest plea to the perjury charge.

The prosecutor asked the court to sentence Diehl to a term of four years, consisting of three years' initial confinement followed by one year of extended supervision, consecutive to sentences that Diehl was already serving. Addressing Diehl's character during his sentencing argument, the prosecutor noted that Diehl had failed to appear for sentencing in the theft case, which had resulted in the state charging him with bail jumping. The prosecutor acknowledged, however, that the bail jumping charge had been dismissed.

During her sentencing argument, defense counsel objected to the prosecutor's reference to the bail jumping charge. She pointed out that the charge had been dismissed partly because of weaknesses in the state's case and therefore the court should not treat it as a "read-in" offense as the prosecutor appeared to be suggesting. She asked the court to sentence Diehl to eight months in jail, to run concurrently with his other sentences.

During the plea colloquy, Diehl admitted that he had lied to the jury in the theft case when he testified about the money in the lock box. The trial court accepted the plea agreement

and sentenced Diehl to one year of initial confinement followed by two years' extended supervision, consecutive to sentences that Diehl was already serving.  When explaining the reasons for its sentence, the court emphasized the gravity of committing perjury and Diehl's prior criminal record.  It did not mention the dismissed bail-jumping charge or Diehl's alleged conduct that gave rise to that charge.

After sentencing, Diehl filed a motion to withdraw his plea.  Response to Pet., dkt. 5, exh. G, at 27-33.  Diehl argued that the prosecutor had engaged in misconduct by initiating the perjury prosecution knowing that the court lacked subject matter jurisdiction and that the prosecution was barred by collateral estoppel; by making misrepresentations at the sentencing hearing; and by referring to the dismissed bail jumping charge at the sentencing hearing, which Diehl perceived to be a breach of the plea agreement.  Diehl alleged that his lawyer had been ineffective for failing to object to these various acts of misconduct.  In addition, he alleged that his lawyer was ineffective for failing to file pretrial motions challenging the admissibility of evidence, jurisdiction, collateral estoppel and dismissal; failing to properly advise him of the law regarding "personal and subject matter jurisdiction, suppression of evidence, double jeopardy, collateral estoppel, consequences of breach of plea agreement, [and] Alfred [*sic*] pleas;" and failing to investigate properly witnesses and documents that would have exonerated him.  *Id*. at 32.  With the exception of his claim based on counsel's failure to object to prosecutorial misconduct, Diehl did not present any facts to support his allegations of trial counsel error.

The trial court denied the motion without a hearing.  It found that Diehl's claims of prosecutorial misconduct were either premised on invalid legal theories or contradicted by the record.  With respect to petitioner's other various allegations of ineffective assistance of counsel,

the court found that Diehl had failed to allege any specific facts suggesting any basis for the

claims.  Mem. Dec. on Def.'s Post-Conviction Motions, Aug. 21, 2006, attached to State's

Response to the Pet., dkt. 5, exh. J.  The Wisconsin Court of Appeals affirmed the circuit court

on largely the same grounds.  I address the findings of the appellate court in more detail in the

context of examining petitioner's claims in the analysis below.

ANALYSIS

I. <u>Standard of Review</u>

This court must accord special deference to the conclusion reached by the state court of

appeals.  Specifically, this court may not grant Diehl's application for a writ of habeas corpus

unless the state court's adjudication of his claim

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause of § 2254(d)(1) pertains to pure questions of law.  *Lindh v.*

*Murphy*, 96 F.3d 856, 868-69 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320

(1997).  A state court decision is contrary to Supreme Court precedent if the state court applies

a rule that contradicts the governing law set forth in Supreme Court cases, or if the state court

confronts a set of facts that are materially indistinguishable from a decision of the Supreme

Court and nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405

(2000).

4

The "unreasonable application" clause of § 2254(d)(1) pertains to mixed questions of law and fact. *Lindh*, 96 F.3d at 870. A state court decision is an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule but unreasonably applies it to the facts of its case. *Williams*, 529 U.S. at 407. An unreasonable application of federal law is different from an incorrect application of federal law. *Id*. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In a case involving a flexible constitutional standard, a state court determination is not unreasonable if the court "takes the rule seriously and produces an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). A decision that is at least minimally consistent with the facts and circumstances of the case is not unreasonable. *Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002).

Finally, as for § 2254(d)(2), a federal court's disagreement with a state court's determination of the facts is not grounds for relief. Pursuant to § 2254(e)(1), the state court's findings of fact are presumed correct, and it is the petitioner's burden to show by clear and convincing evidence that the state court's factual determinations were incorrect *and* unreasonable. *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002).


II.  Ineffective Assistance of Counsel--Failure to Object to Prosecutorial Misconduct

To establish a claim of ineffective assistance of counsel, a defendant must prove that (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the

attorney's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant "bears a heavy burden when seeking to establish an ineffective assistance of counsel claim." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (quoting *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir. 1994)).  To satisfy the first prong of the *Strickland* test, the performance element, a defendant must identify the acts or omissions of counsel that form the basis of his claim of ineffective assistance.  *Strickland*, 466 U.S. at 690; *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988).  To establish the second prong, the prejudice element, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Moya-Gomez*, 860 F.2d at 764.  In the plea context, this means that the defendant must show that he probably would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The state courts denied Diehl's request for an evidentiary hearing on his claims of ineffective assistance of counsel and affirmed his conviction.  I focus on the decision of the state court of appeals, which was the last state court to pass on the merits of Diehl's claims.  *Williams v. Bartow*, 481 F.3d 492, 497-98 (7th Cir. 2007) (relevant state court decision is that of last state court to review issue presented).  Like the trial court, the appellate court recognized that Diehl's claims of ineffective assistance were governed by *Strickland*'s two-part test.  *State v. Diehl*, 2008 WI App 64, ¶6, 750 N.W. 2d 518 (unpublished opinion), attached to State's Response to the Pet., dkt. 5, exh. E.  It found that Diehl could not meet his burden under *Strickland* because his underlying claims of prosecutorial misconduct had no merit.  Because it is beyond dispute that *Strickland* provides the proper framework for evaluating petitioner's claims and that

6

a lawyer cannot be ineffective for failing to raise a meritless claim, *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993), the determinative question in this case is whether the court of appeals reasonably evaluated Diehl's underlying claims of prosecutorial misconduct.

I begin with Diehl's theory that his prosecution was void at the outset for "lack of subject matter jurisdiction" because the indictment in the theft case "failed to charge any crime known to state law." The state appellate court rejected this claim, explaining that the crime of theft by contractor was defined in Wis. Stat. § 779.02(5) and made punishable under Wis. Stat. § 943.20, the theft statute. *State v. Diehl*, 2008 WI App 64, ¶8; *see also State v. Diehl*, 2007 WI App 230, ¶3, 740 N.W. 2d 901 (unpublished opinion) (rejecting Diehl's contention that complaint in perjury case did not adequately allege all elements of the crime). Even if the state court were mistaken, Diehl is not entitled to habeas relief on this claim because a state court's interpretation of its own state law is not subject to review by a federal court. *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Huusko v. Jenkins*, -- F.3d – , 200 WL 383653, *3 (7th Cir. Feb. 18, 2009) ("a federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law"); *see also Rivera v. Illinois*, __ U.S. __, __ S.Ct. __ 2009 WL 815033 at *7 (March 31, 2009) ("A mere error of state law . . . is not a denial of due process.")

Also without merit is Diehl's contention that the state was barred by collateral estoppel from charging him with perjury solely on the basis of evidence and statements made during the theft trial. The doctrine of collateral estoppel, which arises out of the constitutional guarantee against double jeopardy, "means simply that when an issue of ultimate fact has once been

7

determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  However, collateral estoppel does not bar a subsequent prosecution unless the issue in dispute was determined at the first trial in favor of the defendant.  *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007) (collateral estoppel "prevents the government from seeking to prosecute a defendant on an issue that has been determined *in the defendant's favor* in a prior prosecution") (emphasis in original); *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir. 1975) (application of doctrine of collateral estoppel "depends upon whether some issue necessary for the prosecution's case in the second trial has necessarily been *found for the defendant* in the first trial") (emphasis added).  As the Wisconsin Court of Appeals recognized, Diehl's double jeopardy theory had no traction because he was convicted, not acquitted, at the theft trial.  *Diehl*, 2008 WI App 64, ¶9.  Thus, there was no constitutional bar to the state charging Diehl with perjury on the basis of his testimony that he had stashed the allegedly stolen money in a lock box.

Diehl next contends that the prosecutor breached the plea agreement when he referred during his sentencing argument to a bail jumping charge that had been dismissed pursuant to the agreement.  According to Diehl, this elevated the charge to a "read-in" for sentencing purposes.  Technically, Diehl is incorrect:  a "read-in" procedure allows the court to consider *uncharged* offenses at the time of sentencing, not offenses that have been charged but dismissed. *State v. McQuay*, 154 Wis. 2d 116, 126, n. 4, 452 N.W. 2d 377 (1990).  Nonetheless, the state courts understood that Diehl was arguing that the prosecutor overstepped the bounds of the plea agreement by referring to the bail jumping charge.

To prove a breach of a plea agreement, Diehl first must establish that an agreement existed. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006). "Although 'the government's promise need not be explicit to be enforceable,' more than an 'unfounded and unilateral belief' is required to support the defendant's assertion that the government made a particular promise in exchange for his cooperation." *United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999) (quoting *United States v. O'Brien*, 853 F.2d 522, 526 (7th Cir. 1988)). Further, to be actionable, any breach of the plea agreement must have been material and substantial, not merely technical. *Hartjes*, 456 F.3d at 790.

In this case, the Wisconsin Court of Appeals found that Diehl had "provide[d] no authority" for his claim that the prosecutor had breached the plea agreement by referring to the dismissed charge. *Diehl*, 2006 WI App 64, ¶12. In addition, it noted that the court could consider evidence of unproven offenses in determining the defendant's character and the need for his incarceration and rehabilitation; therefore, reference to the dismissed charge did not breach the plea agreement. *Id*. (citing *McQuay*, 154 Wis. 2d at 126, 452 N.W. 2d 377).

I cannot say that the state appellate court's analysis was incorrect, much less unreasonable. As the court noted, Diehl adduced no evidence suggesting that the prosecutor agreed that he would not make any mention of the dismissed bail jumping charge at the sentencing hearing. Further, the court was correct when it observed that under Wisconsin law, "the trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing." *Elias v. State*, 93 Wis.2d 278, 286 N.W.2d 559, 562 (1980). Thus, the trial court could have considered the dismissed bail jumping charge regardless

9

of the prosecutor's comments.  Finally, even if the prosecutor may have breached the spirit if not

the letter of the plea agreement, the breach was not material or substantial.  The prosecutor

acknowledged that the charge had been dismissed.  In addition, Diehl's lawyer called the matter

to the court's attention and argued why it should disregard the prosecutor's statements about

the dismissed charge.  Nothing in the record suggests that the prosecutor's statements deprived

Diehl of the benefit for which he bargained.

Finally, Diehl contends that the prosecutor made a number of erroneous statements of

fact at the sentencing hearing, including:  1) the Department of Corrections did not attempt to

revoke Diehl's probation in connection with the theft by contractor charge because it was

waiting to see if Diehl was convicted; 2) Diehl lied to police and his probation agent about

having the money in question; 3) Diehl enlisted his wife to lie to the police about the location

of the money; 4) the judge in the theft case ordered the parties not to disclose Diehl's wife's

statements to police about what she did with the money in question; and 5) Diehl absconded

from probation the day after trial.  When evaluating a defendant's claim that a prosecutor's

comments constitute misconduct, courts often use a two-step inquiry.  The threshold question

is whether the comments themselves were improper.  *United States v. Sandoval*, 347 F.3d 627,

632 (7th Cir. 2003).  If improper, then the court considers whether the statements, viewed in

context of the entire record, deprived the defendant of a fair trial, or, as in this case, a fair

sentencing hearing.  *Id*.

Reviewing Diehl's file and the files in the related theft by contractor and bail jumping

cases, the state circuit court could find nothing to suggest that any of the prosecutor's statements

were untrue or material to the sentence that the court imposed.  Mem. Dec. on Def.'s Post-

10

Conviction Motions, Aug. 21, 2006, attached to State's Response to the Pet., dkt. 5, exh. J, at 4-6. The court of appeals agreed with the trial court. *Diehl*, 2006 WI App 64, ¶11. Diehl has presented no facts, much less "clear and convincing evidence," to overcome this factual determination by the state courts. The only fact that may not have been true was the prosecutor's assertion that Diehl had attempted to present false testimony through his wife about the whereabouts of the money that Diehl had said was in the lockbox, a fact that defense counsel disputed at the sentencing hearing. However, the trial court expressly found at sentencing that Diehl had "probably not" gotten his wife involved and nothing in the court's remarks suggests that it relied on the prosecutor's accusations in arriving at Diehl's sentence. Tr. of Sentencing, Dec. 5, 2005, at 38, attached to Pet., dkt. 1. Accordingly, the state court of appeals did not apply clearly established federal law unreasonably or make any unreasonable determinations of fact when it concluded that none of the prosecutor's statements were improper or deprived petitioner of a fair sentencing hearing.

In sum, because none of Diehl's claims of prosecutorial misconduct had any merit, it follows that the state appellate court applied *Strickland* reasonably when it rejected his ineffective assistance claim predicated on her failure to object to the alleged misconduct.


III. Ineffective Assistance of Counsel--Additional Claims

Diehl raises a number of additional claims of ineffective assistance of counsel. He alleges that his lawyer failed to obtain exculpatory evidence by failing to interview Diehl's wife and obtain bank statements. He also contends that his lawyer gave him bad advice during the plea hearing when, in response to the court's question asking whether Diehl knew he was lying when

11

he testified that the money was in the lock box, counsel advised him to say "yes."  Hearkening back to his collateral estoppel argument, Diehl argues that if he would have answered "no," the court would have had no factual basis for finding him guilty because the state had no "newly discovered evidence" of perjury.

The state appellate court affirmed the trial court's decision to deny these claims without an evidentiary hearing, agreeing that Diehl's allegations were too conclusory to warrant a hearing.  *Diehl*, 2006 WI App 64, ¶13.  Diehl contends that this finding was in error and that he is therefore entitled to an evidentiary hearing in this court.  He is incorrect.  A § 2254 petitioner who requests an evidentiary hearing on claims he was unable to develop in state court must surmount the statutory barrier erected in 28 U.S.C. § 2254(e)(2).  *Williams*, 529 U.S. at 424.  That provision, as amended by the AEDPA, provides that "[i]f the [petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless his claim relies either on new but retroactively-applied Supreme Court law or on previously undiscoverable facts that show clearly and convincingly that no reasonable factfinder would have found the applicant guilty but for constitutional error.  28 U.S.C. § 2254(e)(2)(A) and (B).  Because nothing in Diehl's petition or the record suggests that the exception of (e)(2)(A) or (B) applies to him, Diehl is not entitled to an evidentiary in federal court if this court concludes that he was responsible for the failure to develop the factual basis of his claim in his state court proceedings.  *Id.*[1]

---

[1]  Even if Diehl made sufficient efforts to develop the record but was foiled by his lawyer or by the state court, he *still* would not automatically get an evidentiary hearing.  At that point, this court would determine the need for a hearing using the pre-AEDPA test.  *Davis v. Lambert*,  388 F.3d 1052, 1061-62 (7th Cir. 2004).

In *Williams*, the Supreme Court explained that when the factual basis of a claim is not developed in state court, the federal habeas court must then consider whether the lack of development was the result of a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 431-32. Diligence requires a prisoner to make a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; at a minimum, the prisoner must seek an evidentiary hearing in state court in the manner prescribed by state law. A finding of diligence does not depend on whether those efforts could have been successful. *Id.* at 435, 437. Although state law guides the inquiry, it is a federal question whether a prisoner has "failed" adequately to develop the factual basis of a claim in state court and therefore is subject to § 2254(e)(2)'s limitations. *Burris v. Parke*, 116 F.3d 256, 258 (7th Cir. 1997) ("Section 2254(e)(2) is a rule of federal law, liberated from the independent-and-adequate-state-grounds doctrine . . .".)

To obtain an evidentiary hearing in state court on his claims of ineffective assistance of counsel, Diehl was required to allege facts that if true, would have entitled him to relief. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W. 2d 50 (1996). To do this, he had to "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 585, 682 N.W. 2d 433 (2004). Diehl failed to make such allegations. He merely cited a list of counsel's alleged errors without attempting to support his accusations with facts. Conclusory allegations without factual support, like those made by Diehl in his post-conviction motion, are insufficient. *Bentley*, 201 Wis. 2d at 314, 318.

Because Diehl failed to develop the factual basis for his claims in state court and neither § 2254(e)(2)(A) or (B) applies to him, he is not entitled to an evidentiary hearing in this court.

13

Without factual support, he cannot establish his remaining claims of ineffective assistance of counsel. *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995) (defendant has burden of supplying "sufficiently precise information [regarding] the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result.") (omission in original) (internal quotations omitted).

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the petition of Earl Diehl for a writ of habeas corpus be DENIED.

Entered this 7th day of April, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

April 7, 2009

Earl L. Diehl
Reg. No. 231129
Oregon Correctional Center
P.O. Box 25
Oregon, WI 53575

Daniel J. O'Brien
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

Re:___Diehl v. McCash
        Case No. 08-cv-742-slc

Dear Mr. Diehl and Attorney O'Brien:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before April 21, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by April 21, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

      (1) injunctive relief;

      (2) judgment on the pleadings;

      (3) summary judgment;

      (4) to dismiss or quash an indictment or information;

      (5) to suppress evidence in a criminal case;

      (6) to dismiss or to permit maintenance of a class action;

      (7) to dismiss for failure to state a claim upon which relief can be granted;

      (8) to dismiss actions involuntarily; and

      (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals. *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**